MARK A. LARSEN (3727)
LISA C. RICO (8901)
LARSEN & RICO, PLLC
230 South 500 East, Suite 260
Salt Lake City, UT 84106
Telephone: (801) 364-6500
mlarsen@larsenrico.com
lrico@larsenrico.com

*Attorneys for Plaintiffs*

_____

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NATHAN W. HANKS and REALSOURCE EQUITY SERVICES, LLC,<br><br>           Plaintiffs,<br><br>vs.<br><br>MICHAEL S. ANDERSON,<br><br>           Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>Judge _____ |

Plaintiffs allege the following:

**PARTIES**

1.  Plaintiff Nathan W. Hanks ("Mr. Hanks") is a resident of Wasatch County, Utah.

2.  Plaintiff RealSource Equity Services, L.L.C. ("RealSource"), is a Utah limited liability company with its principal place of business in Salt Lake County, Utah.

3.  Defendant Michael S. Anderson is a resident of Salt Lake County, Utah.

## BACKGROUND

4. Mr. Anderson, as seller, and Mr. Hanks, as buyer, entered into a Membership Interests Purchase Agreement effective as of January 1, 2018 (the "Agreement").

5. Messrs. Hanks and Anderson each owned 50% of the issued and outstanding membership interests in RealSource. Pursuant to the Agreement, Mr. Hanks purchased Mr. Anderson's 50% interest in RealSource, as well as certain membership interests in other RealSource related limited liability companies.

6. As of the effective date of the Agreement, RealSource was, and now continues to be, in the business of sponsoring and managing diversified real estate investments for investors and institutions seeking strong stable returns. Relying on its 30 year track record in commercial real estate investing, RealSource and its clients have acquired more than $950 million of real estate in conjunction with its investors via direct real estate transactions.

7. RealSource has a client list of approximately 900+ investors who participate in RealSource's direct investments in real estate.

## JURISDICTION AND VENUE

8. This Court has personal jurisdiction over this action based on the parties' agreement that the exclusive jurisdiction for any dispute relating to the Agreement shall be the state and federal courts located in Salt Lake County, Utah. Agreement ¶ 10.9(c).

9. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10. The parties agreed that the exclusive jurisdiction for any dispute relating to the Agreement shall be the state and federal courts located in Salt Lake County, Utah. Agreement ¶ 10.9(c).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**FIRST CLAIM FOR RELIEF**
**(Breach of the Non-Competition and Non-Solicitation**
**Provisions of the Agreement)**

12. Mr. Hanks incorporates by reference paragraphs 1 through 11, inclusive, of this Complaint.

13. Paragraph 7.4 of the Agreement, entitled, "Non-Competition; Non-Solicitation," states:

> (a) **For a period of five (5) years** commencing on the Closing Date (the "Restricted Period"), **Seller shall not, and shall not permit any of its Affiliates to, directly or indirectly, (i) engage in or assist others in engaging in any business that would be directly or indirectly competitive with any RS Entity** as of the Closing Date (the "Restricted Business") **in areas in which any RS Entity conducted business as of the Closing Date** (the "Territory"); (ii) have an interest in any Person that engages directly or indirectly in the Restricted Business in the Territory in any capacity, including as a partner, shareholder, member, employee, principal, agent, trustee or consultant; or (iii) intentionally interfere in any material respect with the business relationships (whether formed prior to or after the date of this Agreement) between any RS Entity and clients or investors of any RS Entity. Notwithstanding the foregoing, Seller may own, directly or indirectly, solely as an investment, securities of (i) any of the RS Entities acquired by the Seller after the Closing or (ii) any Person traded on any national securities exchange if Seller is not a controlling Person of, or a member of a group which controls, such Person and does not, directly or indirectly, own 5% or more of any class of securities of such Person.
>
> (b) During the Restricted Period, Seller shall not, and shall not permit any of its Affiliates to, directly or indirectly, hire or solicit any employee of any RS Entity or encourage any such employee to

leave such employment or hire any such employee who has left such employment, except pursuant to a general solicitation which is not directed specifically to any such employees; provided, that nothing in this Section 7.4(b) shall prevent Seller or any of its Affiliates from hiring (i) any employee whose employment has been terminated by a RS Entity or Buyer or (ii) after one (1) year from the date of termination of employment, any employee whose employment has been terminated by the employee.

(c)   **During the Restricted Period, Seller shall not, and shall not permit any of its Affiliates to, directly or indirectly, solicit or entice, or attempt to solicit or entice, any clients of or investors in any RS Entity** or potential clients of or investors in any RS Entity <u>with the intention of diverting their business or services from any RS Entity</u> or for any other purposes the effect of which is to divert their business or services from any RS Entity.

(d)   **Seller acknowledges that a breach or threatened breach of this Section 7.4 would give rise to irreparable harm to Buyer**, for which monetary damages would not be an adequate remedy, and hereby agrees that in the event of a breach or a threatened breach by Seller of any such obligations, Buyer shall, in addition to any and all other rights and remedies that may be available to it in respect of such breach, be entitled to equitable relief, including a temporary restraining order, an injunction, specific performance and any other relief that may be available from a court of competent jurisdiction (without any requirement to post bond).

(e)   Seller acknowledges that the restrictions contained in this Section 7.4 are reasonable and necessary to protect the legitimate interests of Buyer and constitute a material inducement to Buyer to enter into this Agreement and consummate the transactions contemplated by this Agreement. In the event that any covenant contained in this Section 7.4 should ever be adjudicated to exceed the time, geographic, product or service, or other limitations permitted by Applicable Law in any jurisdiction, then any court is expressly empowered to reform such covenant, and such covenant shall be deemed reformed, in such jurisdiction to the maximum time, geographic, product or service, or other limitations permitted by Applicable Law. The covenants contained in this Section 7.4 and each provision hereof are severable and distinct covenants and provisions. The invalidity or unenforceability of any such covenant or provision as written shall not invalidate or render unenforceable the remaining covenants or provisions hereof, and any such invalidity or unenforceability in any jurisdiction shall not invalidate or

render unenforceable such covenant or provision in any other jurisdiction.

(Emphasis added.)

14. Mr. Anderson breached the Non-Competition Provisions of the Agreement in the following ways, among others:

   a. By establishing an entity the competes directly with RealSource;

   b. By soliciting investments from RealSource clients in projects which Paragraph 7(a) defines as "Restricted Business[es]"

15. Paragraph 10.10 of the Agreement, entitled, "Specific Performance," states: "The Parties agree that irreparable damage would occur if any provision of this Agreement were not performed in accordance with the terms hereof and that the parties shall be entitled to specific performance of the terms hereof, in addition to any other remedy to which they are entitled at law or in equity."

16. Paragraph 10.9(a) of the Agreement, entitled, "Governing Law; Dispute Resolution; Submission to Jurisdiction; Waiver of Jury Trial," states:  This Agreement shall be governed by and construed in accordance with the internal laws of the State of Utah without giving effect to any choice or conflict of law provision or rule (whether of the State of Utah or any other jurisdiction).

17. Pursuant to Fed. R. Civ. P. 65, Mr. Hanks is entitled to a temporary restraining order, preliminary injunction and permanent injunction prohibiting Mr. Anderson and any of his affiliates,  jointly and severally, and other persons who are in active concert or participation with them, from competing with RealSource, or soliciting RealSource's clients on such terms as the court deems reasonable.

18. To the extent Mr. Anderson or his affiliates have competed with RealSource or solicited its clients, Mr. Hanks is entitled to damages including disgorgement of Mr. Anderson's or his affiliates' gross profits or, alternatively, unjust enrichment.

## SECOND CLAIM FOR RELIEF
### (Breach of the Confidentiality Provision of the Agreement)

19. Plaintiffs incorporate by reference paragraphs 1 through 11, inclusive, and 13 through 18, inclusive, of this Complaint.

20. Paragraph 7.3 of the Agreement, entitled, "Confidentiality," states:

> From and after the Closing, Seller shall, and shall cause its Affiliates to, hold, and shall use its reasonable best efforts to cause its or their respective Representatives to hold, in confidence any and all information, whether written or oral, concerning the RS Entities, except to the extent that Seller can show that such information (a) is generally available to and known by the public through no fault of Seller, any of its Affiliates or their respective Representatives; or (b) is lawfully acquired by Seller, any of its Affiliates or their respective Representatives from and after the Closing from sources which are not prohibited from disclosing such information by a legal, contractual or fiduciary obligation. . . .

21. RealSource is a third-party beneficiary of this provision of the Agreement.

22. The confidential information in Paragraph 7.3 of the Agreement includes, but is not limited to, RealSource's customer list. The customer list includes the names and email addresses, among other information, of current and past investors in direct investment real estate projects.

23. Mr. Anderson used the names and email addresses on RealSource's confidential customer lists to solicit and, in some cases, obtain business from current or past RealSource investors.

24.     Pursuant to Fed. R. Civ. P. 65, Plaintiffs are entitled to a temporary restraining order, preliminary injunction and permanent injunction prohibiting Mr. Anderson and any of his affiliates, jointly and severally, and other persons who are in active concert or participation with them, from any actual or threatened misappropriation of RealSource's confidential customer lists on such terms as the court deems reasonable.

25.     To the extent Mr. Anderson or his affiliates have used RealSource's confidential customer lists to obtain any investments in any of their projects, Plaintiffs are entitled to damages, at their election, for disgorgement of Mr. Anderson's or his affiliates' gross profits, unjust enrichment or, alternatively, to Plaintiffs' lost profits.

### THIRD CLAIM FOR RELIEF
### (Violation of Economic Espionage Act)

26.     RealSource incorporates by reference paragraphs 1 through 11, inclusive, 13 through 18, inclusive, and 19 through 25, inclusive, of this Complaint.

27.     RealSource's confidential customer list and distribution system and business plan constitute trade secrets under the Economic Espionage Act, 18 U.S.C. § 1832(a).

28.     The preceding acts constitute the conversion of a trade secret in violation of the Economic Espionage Act.

29.     Under the Economic Espionage Act, 18 U.S.C. § 1836(3)(B), RealSource is entitled to damages for actual loss caused by the misappropriation of the trade secret and damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss.

30. Because the trade secret was willfully and maliciously misappropriated, RealSource is entitled to exemplary damages in an amount not more than two times the amount of the damages awarded under the preceding paragraph of this Complaint.

31. Further, and in addition to damages, under the Economic Espionage Act, 18 U.S.C. § 1836(3)(A)(i), and pursuant to Fed. R. Civ. P. 65, RealSource is entitled to a temporary restraining order, preliminary injunction and permanent injunction prohibiting Mr. Anderson and any of his affiliates, jointly and severally, and other persons who are in active concert or participation with them, from any actual or threatened misappropriation of Plaintiffs' trade secrets on such terms as the court deems reasonable.

WHEREFORE, Plaintiffs request the following relief against Defendant as follows:

A. On the First Claim for Relief, pursuant to Fed. R. Civ. P. 65, Mr. Hanks is entitled to a temporary restraining order, preliminary injunction and permanent injunction prohibiting Mr. Anderson and any of his affiliates, jointly and severally, and other persons who are in active concert or participation with them, from competing with RealSource or soliciting RealSource's clients on such terms as the court deems reasonable.

B. On the First Claim for Relief, to the extent Mr. Anderson or his affiliates have competed with RealSource or solicited its clients, for a judgment in favor of Mr. Hanks for the disgorgement of Mr. Anderson's or his affiliates' gross profits in an amount to be proven at trial.

C. On the Second Claim for Relief, pursuant to Fed. R. Civ. P. 65, Plaintiffs are entitled to a temporary restraining order, preliminary injunction and permanent injunction prohibiting Mr. Anderson and any of his affiliates, jointly and severally, and other persons who are in active concert or participation with them, from any actual or threatened misappropriation of RealSource's confidential customer lists on such terms as the court deems reasonable.

D. To the extent Mr. Anderson or his affiliates have used RealSource's confidential customer lists to obtain any investments in any of their projects, Plaintiffs are entitled to damages, at their election, including disgorgement of Mr. Anderson's or his affiliates' gross profits, unjust enrichment or, alternatively, to Plaintiffs' lost profits.

E. On the Third Claim for Relief, for a judgment in favor of RealSource and against Mr. Anderson as follows:

   a. For damages for actual loss caused by the misappropriation of the trade secret and damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss.

   b. Because the trade secret was willfully and maliciously misappropriated, for a judgment in favor of RealSource for exemplary damages in an amount not more than two times the amount of the damages awarded under paragraph 24 of this Complaint.

    c. Further, and in addition to damages, under the Economic Espionage Act, 18 U.S.C. § 1836(3)(A)(i), and pursuant to Fed. R. Civ. P. 65, for a temporary restraining order, preliminary injunction and permanent injunction prohibiting Mr. Anderson and his affiliates, jointly and severally, and other persons who are in active concert or participation with them, from any actual or threatened misappropriation of RealSource's trade secrets on such terms as the court deems reasonable.

F. On all Claims for Relief, for a judgment in favor of Plaintiffs and against Mr. Anderson for all of Plaintiffs' attorney fees and costs incurred in this action.

G. For a judgment in favor of Plaintiffs and against Mr. Anderson for such other and further relief as the Court may deem appropriate.

Dated: December 26, 2019.

                                      LARSEN & RICO, PLLC

                                      /s/ Mark A. Larsen
                                      _____
                                      Mark A. Larsen
                                      Lisa C. Rico
                                      *Attorneys for Plaintiffs*