UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| NATHAN W. HANKS and REALSOURCE EQUITY SERVICES, LLC,<br><br>Plaintiffs and Counterclaim Defendants,<br><br>v.<br><br>MICHAEL S. ANDERSON; AKA PARTNERS, LC; KENT ANDERSON; and MICHAEL HOWARD,<br><br>Defendants and Counterclaimants. | **REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART KENT ANDERSON AND MICHAEL HOWARD'S MOTION TO AMEND COUNTERCLAIM AND THIRD-PARTY COMPLAINT (DOC. NO. 127)**<br><br>Case No. 2:19-cv-00999-DBB-DAO<br><br>Judge David Barlow<br><br>Magistrate Daphne A. Oberg |
| KENT ANDERSON and MICHAEL HOWARD,<br><br>Third-Party Plaintiffs,<br><br>v.<br><br>REALSOURCE BROKERAGE SERVICES, L.C.; REALSOURCE PROPERTIES, LLC; and JOHN DOES 1-100,<br><br>Third-Party Defendants. | |

Before the court is Kent Anderson and Michael Howard's Motion for Leave to Amend the Counterclaim and Third-Party Complaint to the Second Amended Complaint, ("Mot.," Doc. No. 127), which seeks to add new claims under Utah's Uniform Voidable Transactions Act, Utah Code Ann. § 25-6-101, *et seq.*, and new third-party defendants previously identified as "John Doe." (*Id.* at 2.) Plaintiffs and Counterclaim Defendants Nathan Hanks and RealSource Equity Services, LLC ("RealSource Equity Services"), and Third-Party Defendants RealSource

1

Brokerage Services, L.C., and RealSource Properties, LLC (collectively, the "current RealSource Parties") oppose to the motion to amend.  (Opp'n, Doc. No. 136.)  As explained below, the undersigned recommends the district judge grant the motion to amend only to the extent it seeks to add Steven W. Moreira as a third-party defendant to Kent Anderson and Michael Howard's existing claims.  Because the proposed amendment is otherwise futile, the undersigned recommends the district judge deny the motion to amend as to all other proposed new claims and parties.[1]

BACKGROUND

Plaintiffs Nathan Hanks and RealSource Equity Services filed this action on December 27, 2019, asserting claims against Defendant Michael Anderson.  (Compl., Doc. No. 2.)  Plaintiffs then amended their complaint to add claims against Kent Anderson and Michael Howard, (First Am. Compl., Doc. No. 4), and AKA Partners, LC ("AKA Partners"), (Second Am. Compl., Doc. No. 27).  As described in the operative complaint, Nathan Hanks and Michael Anderson each owned a 50% membership interest in RealSource Equity Services, a company which manages real estate investments.  (*Id.* ¶¶ 8–9.)  Kent Anderson and Michael Howard were independent contractors working for RealSource Equity Services.  (*Id.* ¶ 18(d).)  Plaintiffs allege Nathan Hanks purchased Michael Anderson's membership interest in January 2018.  (*Id.* ¶¶ 7–8.)  Afterward, Michael Anderson allegedly violated the purchase agreement by establishing a competing entity (AKA Partners), soliciting clients from RealSource Equity Services, and recruiting Kent Anderson and Michael Howard to work for AKA Partners while they were still working for RealSource Equity Services.  (*Id.* ¶ 18.)  Plaintiffs also allege Kent Anderson and

---

[1] Neither party requested a hearing.  Pursuant to Local Rule DUCivR 7-1(f), the court finds oral argument unnecessary and makes its recommendation on the motion based on the parties' written memoranda.

Michael Howard shared client lists and other confidential information belonging to RealSource Equity Services with Michael Anderson and AKA Partners.  (*Id.* ¶¶ 40–47.)

Kent Anderson and Michael Howard filed an answer on April 10, 2020.  (Doc. No. 53.) On September 4, 2020, they filed an amended answer, counterclaim, crossclaim, and third-party complaint (hereafter, "counterclaim").[2]  (Countercl., Doc. No. 76.)  They asserted counterclaims against Nathan Hanks and RealSource Equity Services, (*id.* ¶¶ 92–145), crossclaims against Michael Anderson, (*id.* ¶¶ 146–92), and third-party claims against related entities RealSource Brokerage Services, L.C. and RealSource Properties, LLC, real estate broker Tahlaha Upshaw Pope, and unidentified "John Doe" parties, (*id.* ¶¶ 23–24, 193–246).  The counterclaim refers to all these parties collectively as the "RealSource Parties."  (*Id.* ¶ 24.)  It describes the John Doe parties as "other entities who own the properties that are the subject of this action" and/or "'principal brokers' involved in the real estate transactions at issue," and states the pleading will be amended when their identities are discovered.  (*Id.* ¶¶ 9, 28.)

As relevant here, Kent Anderson and Michael Howard allege they were real estate agents hired by the RealSource Parties to locate and acquire real estate investment opportunities.  (*Id.* ¶¶ 21–22, 29, 45–46.)  They allege the RealSource Parties developed two income pools (the "Original Pool" and the "New Pool") through which independent contractors who helped acquire properties, including Kent Anderson and Michael Howard, could share in revenue streams stemming from the RealSource Parties' properties.  (*Id.* ¶¶ 33–40, 48–49.)  Members of these income pools received "commissions, property income, operating income, and back-end income" from properties in each pool's portfolio.  (*Id.* ¶¶ 37, 39, 48.)  Kent Anderson and Michael

---

[2] This pleading was originally filed on September 4, 2020, as Doc. No. 72.  Due to filing errors, it was refiled on October 8, 2020, as Doc. No. 76.  This order refers to the corrected filing (Doc. No. 76).

Howard allege they are owed "legacy income" from these income pools for services already rendered to the RealSource Parties, including income derived from specific properties listed in their pleading.  (*Id.* ¶¶ 49–54.)  They allege the RealSource Parties have sold several of these properties without paying them the related legacy income to which they are entitled, and that they are owed other unpaid commissions for prior work.  (*Id.* ¶¶ 74, 78, 88–89.)  They allege Ms. Pope "is one of the brokers [who] . . . has assisted [Mr.] Hanks in closing on properties," and they explain she was added as a third-party defendant to satisfy the requirement of Utah Code section 61-2f-409(2) that any action seeking recovery of real estate commissions must be brought against the "principal broker" with whom the sales agent was affiliated.  (Countercl. ¶¶ 24, 26–27, Doc. No. 76.)  Based on these allegations, Kent Anderson and Michael Howard assert claims for theft, conversion, breach of fiduciary duty, breach of contract, accounting, breach of the duty of good faith and fair dealing, unjust enrichment/quantum meruit, intentional interference with prospective economic relations, misappropriation of trade secrets, and declaratory and injunctive relief.[3]  (*Id.* ¶¶ 92–246.)

The deadline to file motions to amend pleadings and add parties was February 16, 2021. (First Am. Scheduling Order, Doc. No. 87.)  On that day, Kent Anderson and Michael Howard moved to amend their counterclaim to add new claims under Utah's Uniform Voidable Transactions Act and to add parties previously identified as "John Doe."  (Defs. and Counterclaimants[] Kent Anderson and Michael Howard's Mot. for Leave to Amend[] the Countercl. ("First Mot. to Amend"), Doc. No. 108.)  The current RealSource Parties opposed the motion to amend.  (Opp'n to First Mot. to Amend, Doc. No. 109.)  In their reply, Kent Anderson

---

[3] These claims are asserted against all "RealSource Parties" as defined in paragraph 24 of the counterclaim, except the misappropriation of trade secrets claim which is asserted against all RealSource Parties other than Michael Anderson.  (*See* Countercl. ¶¶ 24, 92–246, Doc. No. 76.)

and Michael Howard improperly proposed a new, revised amended pleading which differed from the proposed amended pleading filed with their motion. (*See* Reply Supporting First Mot. to Amend, Doc. No. 113; Docket Text Order (April 7, 2021), Doc. No. 120.) The court directed them to either: (1) proceed with their original motion to amend and the proposed amended pleading attached thereto, or (2) withdraw their motion to amend and file a new motion based on the revised amended counterclaim. (Docket Text Order (April 7, 2021), Doc. No. 120.) The court ordered them to either file a new reply or withdraw their motion by April 14, 2021. (*Id.*) On April 14, Kent Anderson and Michael Howard filed a notice of withdrawal of their motion to amend, stating their intent to file a new motion. (Notice of Withdrawal of Mot. to Amend, Doc. No. 123.) Two weeks later, on April 27, 2021, they filed the motion to amend now before the court. (Mot., Doc. No. 127.)

After the motion to amend was filed, the court granted Ms. Pope's motion to dismiss the claims against her for lack of personal jurisdiction, finding the allegations in Kent Anderson and Michael Howard's counterclaim insufficient to establish personal jurisdiction. (*See* Order Granting Mot. to Dismiss or, in the Alternative, Mot. for More Definite Statement, Doc. No. 143; *see also* Audio Recording: Hr'g (June 8, 2021), at 43:55–54:52.)

<u>LEGAL STANDARD</u>

Under the Federal Rules of Civil Procedure, after expiration of the time in which a pleading may be amended as a matter of course, a party may amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts "should freely give leave when justice so requires." *Id.* A district court's decision to grant or deny leave to amend under Rule 15 falls within its discretion. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Courts may deny leave to amend "only for reasons such as 'undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of [the] amendment.'"  *United States ex rel. Ritchie v. Lockheed Martin Corp.*, 558 F.3d 1161, 1166 (10th Cir. 2009) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In addition to satisfying the Rule 15(a) standard, a party seeking leave to amend pleadings after the deadline in the scheduling order has passed must also demonstrate good cause to modify the scheduling order under Rule 16(b)(4) of the Federal Rules of Civil Procedure. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014); *see also* Fed. R. Civ. P. 16(b)(4) (providing that a scheduling order "may be modified only for good cause and with the judge's consent").

<u>DISCUSSION</u>

Kent Anderson and Michael Howard seek leave to amend their counterclaim, crossclaim, and third-party complaint to add new claims and parties.  First, they seek to add two new causes of action under Utah's Voidable Transactions Act against all RealSource Parties: (1) voidable transfer under Utah Code section 25-6-202, and (2) fraudulent transfer under Utah Code section 25-6-203.  (*See* Mot. 3–4, Doc. No. 127; Proposed Am. Countercl. and Third-Party Compl. ("Proposed Am. Countercl."), ¶¶ 169–80, Doc. No. 127-1.)  Second, they seek to add four third-party defendants formerly named as "John Doe": RealSource Properties OP, LP ("RSPOP"), ████████████████████████, ████████████████████████████, and Steven W. Moreira.  (*See* Mot. 3–4, Doc. No. 127.)

According to the proposed amended pleading, proposed new third-party defendant RSPOP is a limited partnership formed on or about August 28, 2020; proposed new third-party

defendant ▮▮▮ is the general partner of RSPOP; and Nathan Hanks is the chief executive officer

of ▮▮▮.  (Proposed Am. Countercl. ¶¶ 102, 104, Doc. No. 127-1.)  Kent Anderson and Michael

Howard allege RSPOP seeks to acquire ownership interests—or to acquire membership interests

in other entities which have ownership interests—in the real properties forming the two income

pools from which Kent Anderson and Michael Howard allege they are owed legacy income.

(Proposed Am. Countercl. ¶¶ 61, 105–06, Doc. No. 127-1; *see also* Mot. 4, Doc. No. 127.)  For

example, they allege proposed new third-party defendant ▮▮▮ is "one of the targeted LLCs for

membership in the RSPOP limited partnership," and that ▮▮▮ owns membership interests in

two LLCs which, in turn, own one of the real properties at issue.  (Proposed Am. Countercl.

¶ 100, Doc. No. 127-1.)  With these actions, Kent Anderson and Michael Howard claim the

RealSource Parties are seeking to use RSPOP to shield their assets, because

> [t]he percentages and amounts owed to [Kent Anderson and Michael Howard]
> with respect to the real properties identified in ¶ 61 [of the proposed amended
> pleading] will be diminished, if not depleted, if ownership interests in said
> properties are transferred to the other non-named RealSource entities (John Does
> 5–100) or LLCs that are not owned or controlled by the RealSource Parties.

(Proposed Am. Countercl. ¶¶ 111–12, Doc. No. 127-1; *see also* Mot. 5, Doc. No. 127.)  They

explain this "damages [their] ability to collect any judgment against the RealSource Parties."

(Proposed Am. Countercl. ¶ 110, Doc. No. 127-1; *see also* Mot. 5, Doc. No. 127.)  They claim

the RealSource Parties' actions violate sections 25-6-202 and -203 of Utah's Voidable

Transactions Act, and they seek "avoidance of any transfer of any asset to RSPOP from any of

the RealSource Parties so that the Counterclaimants may recover the amounts due and owing

from the RealSource Parties."  (Proposed Am. Countercl. ¶¶ 169–80, Doc. No. 127-1; *see also*

Mot. 5, Doc. No. 127.)

The proposed amended pleading also asserts claims against former third-party defendant Tahlaha Upshaw Pope and proposed new third-party defendant Steven Moreira based on allegations that these individuals acted as brokers for the RealSource Parties.  (*See* Proposed Am. Countercl. ¶¶ 31–32, Doc. No. 127-1; *see also* Mot. 6, Doc. No. 127.)  Ms. Pope had not yet been dismissed for lack of personal jurisdiction at the time the motion to amend was filed.  The allegations related to Ms. Pope and Mr. Moreira in the proposed amended pleading are substantially similar to the allegations related to Ms. Pope in the original counterclaim.  (*Compare* Countercl. ¶¶ 8, 15, 24, 27, Doc. No. 76 *with* Proposed Am. Countercl. ¶¶ 7–8, 18–19, 31–32, 35, Doc. No. 127-1.)

The current RealSource Parties oppose the motion to amend, arguing (1) the motion was untimely, (2) the proposed amended pleading is futile, and (3) adding the proposed new third-party-defendant entities would cause substantial financial damage to these entities and innocent third parties.  (Opp'n 2, 6–15, Doc. No. 136.)

For the reasons explained below, the court finds Kent Anderson and Michael Howard's motion to amend was not untimely, and the current RealSource parties have failed to show the amendment would cause them undue prejudice.  Further, the current RealSource Parties have not asserted any basis to deny the motion to amend to the extent it seeks to add Mr. Moreira as a third-party defendant to the existing claims.  However, the proposed amendment is futile as to all other proposed new claims and parties because (1) it fails to state a plausible claim for relief under Utah Code sections 25-6-202 and -203; (2) it fails to state any other plausible claim for relief against proposed new third-party defendants RSPOP, ███, and ███; and (3) it fails to establish personal jurisdiction over Ms. Pope, in light of the court's prior ruling dismissing her for lack of personal jurisdiction based on similar allegations.  For these reasons, the undersigned

recommends the motion to amend be granted only to the extent it seeks to add Mr. Moreira as a third-party defendant to the existing claims.  The undersigned recommends the motion be denied as to all other proposed new claims and parties.

### A. Untimeliness

The current RealSource Parties argue the motion to amend was untimely because it was filed after the court's April 14, 2021 deadline for Kent Anderson and Michael Howard to withdraw their prior motion to amend.  (Opp'n 2, Doc. No. 136.)  However, the court's order did not state April 14, 2021 was the deadline to file a new motion to amend.  (*See* Docket Text Order (April 7, 2021), Doc. No. 120.)  Rather, the order stated: "If Kent Anderson and Michael Howard elect to withdraw their [108] Motion to Amend and file a new motion, they shall file a notice of withdrawal by April 14, 2021."  (*Id.*)  The order did not set a deadline for filing the new motion. Kent Anderson and Michael Howard timely filed a notice of withdrawal by April 14, and they filed a new motion to amend two weeks later.  The new motion was filed reasonably promptly under the circumstances, where no specific deadline was set.  The court finds no "undue delay, bad faith[,] or dilatory motive" which would justify denying leave to amend under Rule 15(a) of the Federal Rules of Civil Procedure.  *See Lockheed Martin Corp.*, 558 F.3d at 1166 (internal quotation marks omitted).

Likewise, the new motion was not untimely under the scheduling order.  Kent Anderson and Michael Howard filed their prior motion to amend before the deadline in the scheduling order expired, and the court's April 7, 2021 order permitted them to file a new motion to amend without setting a specific deadline to do so.  (*See* Docket Text Order (April 7, 2021), Doc. No. 120.)  Accordingly, Kent Anderson and Michael Howard need not show good cause to modify the scheduling order under Rule 16(b)(4).

For these reasons, the motion to amend was not untimely.

**B.  Undue Prejudice**

The current RealSource Parties argue the motion to amend should be denied because the proposed amendment would cause substantial financial damage to the RealSource Parties and innocent third parties.  (Opp'n 15, Doc. No. 136.)  Specifically, they argue naming RSPOP as a party to this lawsuit would interfere with the efforts of its general partner, ███, to become a real estate investment trust, thereby causing financial damage to both entities and to their investors.  (*Id.*)  They also assert adding RSPOP to the lawsuit would jeopardize nonparty entities' ability to refinance debts.  (*Id.*)

In making this argument, the RealSource Parties do not reference any of the factors set forth in Tenth Circuit case law justifying denial of a motion to amend.  *See, e.g.*, *Lockheed Martin Corp.*, 558 F.3d at 1166.  The factor which appears most applicable to this argument is "undue prejudice to the opposing party."  *Id.*  However, the current RealSource Parties do not argue they will be prejudiced by the proposed amendment but, instead, focus on harm to the proposed new third-party defendants and other nonparties.  The current RealSource Parties have not cited any authority supporting the idea that potential harm to nonparties justifies denial of leave to amend under Rule 15(a).

Moreover, "undue prejudice" in this context does not mean any prejudice which might arise merely as a result of being named as a party to a lawsuit.  Instead, "[c]ourts typically find prejudice only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment."  *Minter*, 451 F.3d at 1208 (internal quotation marks omitted).  Thus, the financial impact of being named as a party to a lawsuit is not the type of prejudice recognized as a basis to deny leave to amend.

For these reasons, the RealSource Parties have failed to show undue prejudice which would justify denial of the motion to amend.

## C.  Futility

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007) (internal quotation marks omitted).

The current RealSource Parties argue Kent Anderson and Michael Howard's proposed new claims under Utah Code sections 25-6-202 and -203 are futile for three reasons.  First, they argue Kent Anderson and Michael Howard have no legal theory as to how a judgment against Nathan Hanks or RealSource Equity Services would allow them to execute on a general partnership interest or membership interests in an LLC.  (Opp'n 6–8, Doc. No. 136.)  Second, they argue the proposed amendment fails to plead fraud with particularity.  (*Id.* at 9–13.)  Third, they argue the claims are not yet ripe because the liability of the RealSource Parties to Kent Anderson and Michael Howard is still being litigated and, therefore, no debtor-creditor relationship currently exists.  (*Id.* at 13–14.)

In reply, Kent Anderson and Michael Howard argue they must be permitted to bring suit against RSPOP and the other identified entities to protect their interests in the real property at issue and to prevent the RealSource Parties' ability to pay a judgment from being diminished. (Reply 5–6, Doc. No. 142.)  They also argue they are not required to plead fraud with particularity under Utah's Voidable Transactions Act, or, in the alternative, that the proposed amendment sufficiently pleads fraud with particularity and otherwise states a claim under this statute.  (*Id.* at 7–8.)  Finally, they argue their proposed new claims are ripe because a judgment is not a prerequisite for claims under Utah's Voidable Transactions Act.  (*Id.* at 8–10.)

The court first examines whether Kent Anderson and Michael Howard's proposed new claims under Utah's Voidable Transactions Act state a plausible claim for relief. The court next examines whether Kent Anderson and Michael Howard's proposed amended pleading states any other plausible claim for relief against the proposed new entity defendants, RSPOP, █████, and █████. The court then considers whether the proposed amendment should be permitted with respect to Ms. Pope, in light of the district judge's prior dismissal of Ms. Pope for lack of personal jurisdiction based on similar allegations. Finally, the court addresses the proposed addition of Mr. Moreira as a third-party defendant on the existing claims.

    1.   <u>Proposed New Claims Under Utah's Voidable Transactions Act</u>

        i.   *Statutory Provisions*

Sections 25-6-202 and -203 of Utah's Voidable Transactions Act provide that "[a] transfer made . . . by a debtor is voidable as to a creditor" if certain criteria are met. Utah Code Ann. §§ 25-6-202(1), 25-6-203(1)–(2). As relevant here, a transfer is voidable under section 25-6-202 if the debtor made the transfer "(a) with actual intent to hinder, delay, or defraud any creditor of the debtor," or "(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." *Id.* § 25-6-202(1). A transfer is voidable under section 25-6-203 as to claims arising before the transfer if "(a) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and (b) the debtor was insolvent at the time or became insolvent as a result of the transfer or obligation." *Id.* § 25-6-203(1). If these criteria are met, the creditor may bring an action against the debtor and/or the transferee to obtain "avoidance of the transfer . . . to the extent necessary to satisfy the

creditor's claim," among other remedies.  *Id.* § 25-6-303(1) (listing remedies), § 25-6-304 (permitting claims against transferees).

Both sections require the existence of a "debtor-creditor relationship."  *See Porenta v. Porenta*, 2017 UT 78, ¶ 12, 416 P.3d 487, 492.  The statute defines "creditor" as "a person that has a claim," and "debtor" as "a person that is liable on a claim."  Utah Code Ann. § 25-6-102(4), (6).  The statute defines "claim" broadly as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  *Id.* § 25-6-102(3).  Thus, to state a claim for relief under this statute, "a plaintiff must allege that [the plaintiff] is a creditor who has a right to payment from the defendant and that the defendant has made transfers of property or incurred obligations that meet the criteria" of sections 25-6-202 and -203.  *Nat'l Loan Investors, L.P. v. Givens*, 952 P.2d 1067, 1070 (Utah 1998).

ii.     *Debtor-Creditor Relationship*

The RealSource Parties argue no debtor-creditor relationship currently exists because their potential liability to Kent Anderson and Michael Howard is still being litigated.  (Opp'n 13, Doc. No. 136.)  They assert they have not found any instances of a litigant successfully adding a claim for fraudulent transfer in relation to a debt which might arise if they prevail in the same lawsuit.  (*Id.* at 14.)  In response, Kent Anderson and Michael Howard argue they are not required to obtain a judgment on their underlying claims against the RealSource Parties before bringing fraudulent transfer claims, citing the definition of "claim" in section 25-6-102(3) and the Utah Supreme Court's decision in *Porenta v. Porenta*, 2017 UT 78.  (Reply 9–10, Doc. No. 142.)

Kent Anderson and Michael Howard have adequately alleged they have a debtor-creditor relationship with the current RealSource Parties. To meet the definition of "creditors" with a "claim" under Utah's Voidable Transactions Act, Kent Anderson and Michael Howard need only allege a "right to payment," which the statute expressly states need not be reduced to a judgment. Utah Code Ann. § 25-6-102(3), (4). Utah courts interpret these provisions broadly and recognize a party as a "creditor" with a "claim" under this statute where the party has asserted any claim for payment or damages—whether or not a lawsuit has been filed or a judgment entered finding the defendant liable on the claim. *See, e.g.*, *Nat'l Loan Investors, L.P. v. Givens*, 952 P.2d 1067, 1070–71 (Utah 1998) (finding a plaintiff adequately alleged a "claim" under the fraudulent transfer statute by alleging amounts owed under a promissory note, even though the court adjudicating the underlying claim had not entered a final order declaring the existence or amount of a deficiency); *Zuniga v. Evans*, 48 P.2d 513, 516 (Utah 1935) (holding a plaintiff was a "creditor" with a "claim" under the fraudulent transfer statute even though her claim was in tort and not reduced to a judgment when the conveyance was made); *Tolle v. Fenley*, 2006 UT App 78, ¶ 14, 132 P.3d 63, 66–67 (finding the plaintiff's threats to sue her father for rape and abuse and her father's "awareness of probable legal action against him amount[ed] to a 'claim' for purposes of" the fraudulent transfer statute); *Bradford v. Bradford*, 1999 UT App 373, ¶ 16, 993 P.2d 887, 891 (finding a husband was a "creditor" of his wife for purposes of a fraudulent transfer claim "given that his claim to the house—although not reduced to judgment in a divorce proceeding—had arisen through recent threats of divorce").

Here, Kent Anderson and Michael Howard have filed claims against the current RealSource Parties alleging these parties owe them "legacy income" and unpaid commissions based on services previously rendered to these parties. (*See* Countercl. ¶¶ 49–54, 74, 78, 88–89,

14

Doc. No. 76; *see also* Proposed Am. Countercl. ¶¶ 60–64, 84, 88, 98–99, 121–22, Doc. No. 127-1.)  Based on these claims, Kent Anderson and Michael Howard have sufficiently alleged they are "creditors" with a "claim" under Utah's Voidable Transactions Act, and that the current RealSource Parties are "debtors" liable on these claims.  Under the Utah case law set forth above, the RealSource Parties' liability need not be adjudicated or reduced to a judgment for a debtor-creditor relationship to exist under this statute.

Nothing in Utah's Voidable Transactions Act prevents Kent Anderson and Michael Howard from asserting fraudulent transfer claims in the same lawsuit as their underlying claims against the RealSource Parties.  And contrary to the RealSource Parties' assertion, at least one Utah case involves a fraudulent transfer claim adjudicated in the same proceeding as the underlying claim.  *See Bradford*, 1999 UT App 373, ¶ 8, 993 P.2d at 890 (addressing a fraudulent transfer claim adjudicated in the same divorce proceeding as the underlying claim for division of the marital estate).  Additionally, the Utah Supreme Court in *Porenta v. Porenta* contemplated that the viability of the underlying claim for payment could be litigated in the same action as a fraudulent transfer claim.  2017 UT 78, ¶ 38, 416 P.3d at 500 (explaining that "in a fraudulent transfer case, the debtor is typically a necessary and indispensable party when the creditor has not reduced [the underlying] claim to judgment . . . because the debtor has an interest in proving whether the creditor's underlying claim against the debtor is valid") (internal quotation marks and citations omitted) (first alteration in original)).  Accordingly, Kent Anderson and Michael Howard may assert their fraudulent transfer claims in the same action as their underlying claims.

However, Kent Anderson and Michael Howard fail to allege a debtor-creditor relationship with the proposed new third-party-defendant entities: RSPOP, ███, and ███.

15

The proposed amended pleading does not plausibly allege any underlying claim or "right to payment" against these entities which would give rise to a debtor-creditor relationship under Utah's Voidable Transactions Act.  The proposed amended pleading is replete with allegations against the "RealSource Parties" collectively, a term which is defined to include RSPOP, █████, and █████.  (*See* Proposed Am. Countercl. 3, Doc. No. 127-1.)  But the only allegations which specifically mention these entities address their involvement in the alleged fraudulent transfers.  (*See id.* ¶¶ 102–16, 169–80.)  The proposed amendment contains no specific allegations supporting an underlying "right to payment" against these particular entities.  Indeed, it alleges RSPOP was formed after Kent Anderson and Michael Howard asserted their original claims against the current RealSource Parties, suggesting RSPOP cannot have been involved in the events giving rise those claims.  (*See id.* ¶¶ 102–03.)  Thus, the proposed amendment fails to allege these entities are "debtors" under Utah's Voidable Transactions Act, and any claim against these entities under this statute must be based on their status as transferees.[4]

### iii.    *Sufficiency of the Allegations Regarding Transfers*

The court next examines whether the proposed amendment states a plausible claim for relief under Utah's Voidable Transactions Act against the current RealSource Parties as debtors and the proposed new third-party-defendant entities as transferees.

The RealSource Parties argue the proposed amendment is futile because it fails to plead fraud with particularity and fails to provide notice of the alleged fraudulent transactions and conduct.  (Opp'n, 9–13, Doc. No. 136.)  In reply, Kent Anderson and Michael Howard argue they are not required to plead fraud to state a claim under Utah's Voidable Transactions Act.

---

[4] Kent Anderson and Michael Howard appear to acknowledge this in their reply, arguing they are not required to allege any relationship with the newly-identified entities because claims may be asserted against transferees under Utah's Voidable Transactions Act.  (Reply 6, Doc. No. 142.)

(Reply 7, Doc. No. 142.)  Alternatively, they argue their proposed amendment pleads fraud with particularity and otherwise states colorable claims under this statute.  (*Id.* at 5–8.)

To avoid dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (internal quotation marks omitted).  "[A] plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).  The Tenth Circuit has not addressed whether this standard applies to claims under Utah's Voidable Transactions Act.  But another court in this district addressing this issue noted "courts generally apply Rule 9(b)'s requirements to intentional fraudulent transfer claims which turn on the transferor's '[] actual intent to hinder, delay, or defraud,' but not to constructive fraudulent transfer claims which turn solely on the sufficiency of the consideration and the transferor's financial condition." *Wing v. Horn*, No. 2:09-cv-00342, 2009 U.S. Dist. LEXIS 77445, at *9 (D. Utah Aug. 26, 2009) (unpublished) (citations omitted).  However, the court concluded the Rule 9(b) standard does not apply to intentional fraudulent transfer claims in circumstances where the Utah statute permits "actual intent" to be inferred based on other "indicia of fraud," such as insolvency.  *Id.* at *12; *see also* Utah Code Ann. § 25-6-202(2) (listing factors which may be considered to determine "actual intent").

Here, Kent Anderson and Michael Howard seek to assert both intentional and constructive fraudulent transfer claims.  They claim the transfers are voidable based on "actual

intent to hinder, delay, or defraud." (*See* Proposed Am. Countercl. ¶ 171, Doc. No. 127-1; *see also* Utah Code Ann. § 25-6-202(1)(a).)  But they also allege the transfers are voidable based on other statutory criteria not requiring "actual intent," or based on factors from which intent may be inferred.  For example, they allege the transfers were made to insiders, the RealSource Parties failed to receive reasonably equivalent value in exchange for the transfers, and the transfers will render the RealSource Parties insolvent.  (*See* Proposed Am. Countercl. ¶¶ 172-173, 177–179, Doc. No. 127-1; *see also* Utah Code Ann. § 25-6-202(1)(b), (2); *id.* § 25-6-203(1)–(2).)  Thus, under the reasoning of *Wing*, at least some of the legal theories asserted in the proposed amendment would not be subject to the heightened pleading standard under Rule 9(b).

But even assuming Kent Anderson and Michael Howard need not plead their claims with particularity, the proposed amendment fails to state a claim for relief under Utah's Voidable Transactions Act.  At minimum, this statute requires the creditor to identify transfers made by a debtor meeting the statutory criteria for voidability.  *See* Utah Code Ann. § 25-6-202(1), § 26-6-203(1)–(2); *see also Nat'l Loan Investors, L.P. v. Givens*, 952 P.2d 1067, 1070 (Utah 1998).  As explained above, only the current RealSource Parties meet the definition of "debtors" under the statute.  But the proposed amendment does not contain any specific allegations regarding transfers by the current RealSource Parties.  It alleges generally that the RealSource parties are "utilizing RSPOP to transfer the RealSource Parties' assets," (Proposed Am. Countercl. ¶ 170, Doc. No. 127-1), but it does not identify any transfers on which their claim is based.  Instead, the proposed amendment contains vague allegations that RSPOP is seeking to acquire membership in unidentified LLCs which may or may not be owned by the RealSource Parties.  (*See id.* ¶¶ 105–108.)  It alleges these LLCs own "percentages, portions or amounts of the real property" at issue or of other LLCs which, in turn, own interests in such property, (*id.* ¶ 106), and that the

LLCs are "transferring ownership percentages, portions, or amounts to RSPOP," (*id.* ¶ 107). However, there are no specific allegations that any property or assets owned by the RealSource Parties are being or have been transferred.

The proposed amendment identifies only one of the LLCs at issue: ███. But the allegations regarding ███ are also insufficient to state a voidable transfer claim. The proposed amendment alleges ███ is "one of the targeted LLCs for membership in the RSPOP limited partnership," (*id.* ¶ 109); that ███ owns membership interests in two other LLCs which together own one of the underlying properties at issue, (*id.*); and that ███ is an "insider and/or related entity," (*id.* ¶ 172). But again, these allegations do not identify any transfer of property or assets owned by the current RealSource Parties.

Because the proposed amended pleading fails to identify any transfer by the current RealSource Parties—the only "debtors" under the statute—it fails to state a claim for a voidable transfer under Utah's Voidable Transactions Act.

Additionally, the proposed amended pleading does not allege any transfer has been made to ███ or ███. Thus, the proposed amendment fails to allege these entities are transferees under Utah's Voidable Transactions Act. As explained above, these entities also do not qualify as debtors under this statute because the proposed amendment does not plausibly allege an underlying claim against or right to payment from these entities. For this separate reason, the proposed new claims are futile as to ███ and ███.

For all of these reasons, the proposed new claims under Utah's Voidable Transactions Act are futile.

2. <u>Other Claims Against RSPOP, ███, and ███</u>

As discussed above, the proposed amendment does not include any specific allegations against RSPOP, ███, or ███ relating to Kent Anderson and Michael Howard's other claims—the existing claims for theft, conversion, breach of fiduciary duty, breach of contract, accounting, breach of the duty of good faith and fair dealing, unjust enrichment/quantum meruit, intentional interference with prospective economic relations, misappropriate of trade secrets, and declaratory and injunctive relief. In the absence of specific allegations explaining these particular entities' involvement in the events underlying these claims, the collective allegations against the "RealSource Parties" are insufficient to state a claim against RSPOP, ███, or ███. Accordingly, the proposed amendment is futile to the extent it seeks to add these parties as third-party defendants to the existing claims.

3. <u>Claims Against Ms. Pope</u>

The court next considers whether the proposed amendment should be permitted as to Ms. Pope, in light of the district judge's prior order dismissing Kent Anderson and Michael Howard's claims against her for lack of personal jurisdiction. (*See* Order Granting Mot. to Dismiss or, in the Alternative, Mot. for More Definite Statement, Doc. No. 143; *see also* Audio Recording: Hr'g (June 8, 2021), at 43:55–54:52.)

The counterclaim contains the following allegations regarding Ms. Pope:

- "Upon information and belief, Pope is an individual residing in Georgia." (Countercl. ¶ 8, Doc. No. 76.)

- "This Court has personal jurisdiction over Pope as she has conducted business dealings and performed brokerage services for and in relation to RSBS, RSES, RSP, and/or Hanks." (*Id.* ¶ 15.)

- "Upon information and belief, Pope is one of the brokers that assists and/or has assisted Hanks in closing on properties.  Pope is associated with and is part of the parties that are engaged in the pattern of conduct described in this Counterclaim, Crossclaim, and Third-Party Complaint and participates as a broker and receives funds from the other entities in exchange for her services."  (*Id.* ¶ 24.)

- "Pope is named as a Third-Party Defendant in this case to satisfy Utah Code Ann. § 61-2f-409(2), to the extent the Court determines the statute applies."  (*Id.* ¶ 27.)

The counterclaim also defined the term "RealSource Parties" used throughout the pleading to include Ms. Pope.  (*Id.*)

The district judge ruled these allegations were insufficient to establish personal jurisdiction over Ms. Pope and granted her motion to dismiss on this basis.  (*See* Audio Recording: Hr'g (June 8, 2021), at 43:55–54:52.)  He found paragraph 27 stated a legal conclusion which was not relevant to personal jurisdiction, and the collective allegations regarding the "RealSource Parties" failed to illuminate Ms. Pope's role.  (*See id.* at 46:18–37, 47:39–50.)  The district judge noted general jurisdiction was not argued, and he found the allegations regarding Ms. Pope in paragraphs 8, 15, and 24 insufficient to meet the requirements of specific jurisdiction.  (*Id.* at 47:50–54:52.)

The allegations regarding Ms. Pope in the proposed amended pleading are identical to the allegations in the counterclaim, except that the proposed amendment also alleges Ms. Pope "conducts business in Utah."  (*See* Proposed Am. Countercl. ¶¶ 8, 18, 31, 35, Doc. No. 127-1.) This additional allegation, which is unsupported by further factual development, is insufficient to overcome the deficiencies identified by the district judge in his prior ruling.  Because there is no explanation of how Ms. Pope's business activities relate to this case and the injuries alleged by

Kent Anderson and Michael Howard, the allegations are insufficient to show Ms. Pope "purposefully directed [her] activities at residents of the forum State," and that the "alleged injuries arise out of or relate to those activities," as required for specific jurisdiction. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) (internal quotation marks omitted). Likewise, they do not establish "continuous and systematic" contacts necessary for general jurisdiction. *Id.* (internal quotation marks omitted).

Because the district judge previously dismissed Ms. Pope as a third-party defendant for lack of personal jurisdiction based on substantially similar allegations, the proposed amendment is futile as to Ms. Pope.

4.  <u>Claims Against Mr. Moreira</u>

The proposed amendment's allegations regarding Mr. Moreira are identical to the allegations regarding Ms. Pope, except that he is alleged to be a domiciled in Florida. (*See* Proposed Am. Countercl. ¶¶ 7, 19, 32, 35, Doc. No. 127-1.) However, unlike Ms. Pope, Mr. Moreira has not challenged the court's personal jurisdiction over him. The court generally is not permitted to inquire into personal jurisdiction sua sponte except in limited circumstances not applicable here. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202 (10th Cir. 1986) ("[A] district court may not inquire into its personal jurisdiction and dismiss a case *sua sponte* except when entering a default judgment."); *see also Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (holding that a district court may, in limited circumstances, dismiss under 28 U.S.C. section 1915 for lack of personal jurisdiction). Although the proposed amendment may be subject to dismissal for lack of personal jurisdiction on motion by Mr. Moreira, the court will not deny leave to amend on this basis, where Mr. Moreira has not raised the issue.

The current RealSource Parties' opposition brief makes only a passing reference to Mr. Moreira and does not offer any basis for denying leave to add Mr. Moreira as a third-party defendant.  (*See* Opp'n 6 n. 15, Doc. No. 136.)  Accordingly, the undersigned recommends Kent Anderson and Michael Howard be permitted to add Mr. Moreira as a third-party defendant to their existing claims.

Because the new allegations regarding Mr. Moreira comprise only a small portion of the proposed amendment which is otherwise futile, Kent Anderson and Michael Howard should be ordered to file a new proposed amended pleading containing only the new allegations related to Mr. Moreira, and omitting the other proposed amendments which have been deemed futile. Thereafter, provided the new proposed amended pleading comports with these requirements, the court will order Kent Anderson and Michael Howard to file it on the record as their operative pleading.

<u>RECOMMENDATION</u>

As explained above, the undersigned recommends the district judge grant Kent Anderson and Michael Howard's motion to amend (Doc. No. 127) only to the extent it seeks to add Steven W. Moreira as a third-party defendant to their existing claims.  The proposed amended pleading is otherwise futile because (1) it fails to state a plausible claim for relief under Utah's Voidable Transactions Act; (2) it fails to state any other plausible claim for relief against proposed new third-party defendants RSPOP, █████, and █████; and (3) it fails to establish personal jurisdiction over Ms. Pope, in light of the court's prior order dismissing the claims against her on that basis.

Accordingly, the undersigned recommends the district judge deny Kent Anderson and Michael Howard's motion for leave to amend as to all other proposed new claims and parties.

The court will send this report and recommendation to all parties, who are notified of their right to object to it. Any objection to this report and recommendation must be filed within fourteen (14) days of service. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED this 16th day of December, 2021.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge

24