THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| NATHAN W. HANKS and REALSOURCE EQUITY SERVICES, LLC,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>v.<br><br>MICHAEL S. ANDERSON; AKA PARTNERS, LC; KENT ANDERSON; and MICHAEL HOWARD,<br><br>    Defendants/Crossclaim Plaintiffs.<br><br>v.<br><br>MICHAEL S. ANDERSON,<br><br>    Crossclaim Defendant,<br><br>v.<br><br>REALSOURCE BROKERAGE SERVICES, L.C.; REALSOURCE PROPERTIES, LLC; and DOES 1–100,<br><br>    Third-Party Defendants,<br><br>v.<br><br>REALSOURCE RESIDENTIAL, LLC,<br><br>    Additional Counterclaim Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [288] REALSOURCE'S MOTION FOR SUMMARY JUDGMENT AGAINST MICHAEL HOWARD'S AFFIRMATIVE CLAIMS**<br><br>Case No. 2:19-cv-00999-DBB-DAO<br><br>District Judge David Barlow |

    The matter before the court is Plaintiffs Nathan Hanks ("Mr. Hanks") and RealSource Equity Services, LLC ("RS Equity"); Third-Party Defendants RealSource Brokerage Services, L.C. ("RS Brokerage") and RealSource Properties, LLC ("RS Properties"); and Additional

1

Counterclaim Defendant RealSource Residential, LLC's (collectively "RealSource") Motion for Summary Judgment Against Michael Howard's Affirmative Claims.[1] RealSource seeks summary judgment against Defendant Michael Howard's ("Mr. Howard") counterclaims.[2] For the reasons below, the court grants RealSource's motion.[3]

## BACKGROUND

RealSource is a conglomeration of three entities: RS Brokerage, RS Equity, and RS Properties. Michael S. Anderson ("Mike Anderson") founded RS Brokerage in 1989.[4] Mr. Hanks and Mike Anderson started RS Equity around 2002.[5] RS Equity's purpose is to attract investors to raise equity and buy property.[6] Mr. Hanks and Mike Anderson jointly own RS Properties.[7]

Mr. Howard has held a Utah real estate license since 2004.[8] He has never been licensed as a broker.[9] In January 2011, Mr. Howard started working for RealSource as a real estate agent and an independent contractor.[10] He joined RS Equity's acquisitions team as an "acquisitions specialist."[11] As such, he had the following tasks: "[f]ind [and] locate properties, underwrite them, present them to the team[,] . . . pursue . . . letter[s] of intent, . . . purchase the

---

[1] Mot. for Summ. J. Against Michael Howard's Affirmative Claims ("Mot. Summ. J."), ECF No. 288, filed July 13, 2023.
[2] The Misappropriation of Trade Secrets counterclaim applies only to Kent Anderson ("Mr. Anderson"). Second Am. Countercl. ¶¶ 128–34, ECF No. 219, filed Feb. 24, 2023.
[3] Having reviewed the briefing and relevant law, the court finds oral argument unnecessary. *See* DUCivR 7-1(g).
[4] Dep. of Nathan Hanks ("Hanks Dep.") 27:14–15, ECF No. 288-3. Initially, the company received referral commissions from brokers as part of a buying tour circuit. *Id.* at 120:6–14. When RealSource later stopped going on buying tours, *id.* at 241:2–4, RS Brokerage's importance lessened, *id.* at 119:20–22 (RS Brokerage now does "[v]ery little.").
[5] *Id.* at 30:15–25.
[6] *Id.* at 30:24–31:6.
[7] *Id.* at 94:8–16.
[8] Dep. of Michael Howard ("Howard Dep.") 12:14–13:6, ECF No. 288-2.
[9] *Id.* at 12:21–22.
[10] *Id.* at 13:17–20, 19:24–20:3; Hanks Dep. 32:25–33:5. Mr. Anderson was also a real estate agent/independent contractor who worked for RealSource from 2002 to 2019. Dep. of Kent Anderson 33:3–4, 90:19, 98:12–18, ECF No. 288-4.
[11] Howard Dep. 25:14–20.

property . . . [,] [s]tay in contract negotiations and facilitate the contract negotiations[,] . . . [a]nd then once [the property is] closed, [stay] involved in due diligence."[12] Mike Anderson served as the principal broker during Mr. Howard's time at RealSource.[13]

For compensation, Mr. Howard understood that RealSource would pay him "money up front at closing, ongoing revenue, and money on the back end when [property was] sold or refinanced."[14] Yet no agreement between Mr. Howard and Mr. Hanks or RealSource was ever formalized in a written employment or independent contractor agreement.[15] Mr. Howard instead avers he had a *verbal* agreement[16] or "understanding"[17] with Mr. Hanks. At one point, Mr. Howard complained to RealSource's chief financial officer ("CFO")[18] about "why isn't [the agreement] formalized and why don't we have a clear understanding of what to expect when these properties happen."[19] The CFO said: "Don't worry; Nate will be fair."[20] Later, Mr. Howard emailed Mr. Hanks and the CFO. He stated: "I'm a little confused about our compensation understanding. I say 'understanding' because we don't have a compensation agreement. It's subject to discretion and adjustment on each and every property."[21]

---

[12] *Id.* at 28:25–29:1–6.
[13] *Id.* at 24:23–25:3.
[14] *Id.* at 23:8–16, 89:4–7.
[15] *Id.* at 20:10–21:20, 22:7–9 ("[I]t was never formalized. There was no *direct* agreement on what we would get when these things closed. It's subjective." (emphasis added)).
[16] Howard Dep. 89:15–21 ("Q. Do you have any writing that says you're entitled to that? Any contract or e-mails that say you're entitled to that? **A. Just the agreement Nate and I had.** Q. And that was verbal, as you've described it, correct? **A. That's correct.**").
[17] *Id.* at 45:11–15; Email from Mike Howard (July 7, 2016), Ex. B, ECF No. 312-1, at 2.
[18] Hanks Dep. 187:20–25.
[19] Howard Dep. 21:5–8.
[20] *Id.* at 21:8–9.
[21] *Id.* at 45:11–15; Email from Mike Howard 2.

Despite the uncertainty, Mr. Howard avers he was to receive compensation when properties closed.[22] But he expressed concern about these payments. After Mr. Howard got $2,000 for a 2012 property closure, he asked Mr. Hanks: "Am I doing it wrong? I mean, if so, I've got to go, because this isn't working."[23] Mr. Hanks responded that RealSource "needed the money in the company and that [RealSource] w[ould] make it right at some point."[24]

Mr. Howard stopped working for RealSource in 2019.[25] He asserts RealSource owes him unpaid compensation based on the agreement with Mr. Hanks.[26] Specifically, he claims damages calculated "on an average of what we were paid at each property, when we were being paid, at 6 percent minimum, always, . . . and 11 percent on the properties I brought to the table."[27]

On September 4, 2020, Kent Anderson ("Mr. Anderson") and Mr. Howard filed their counterclaims against RealSource.[28] On January 10, 2023, RealSource moved for summary judgment on Mr. Anderson's counterclaims.[29] The court granted judgment to RealSource.[30] Then

---

[22] Howard Dep. 20:16–23 (Pinehurst property closing); Email from Kelly Randall (Aug. 15, 2018), ECF No. 303-2 (Jackson Branch property sale); Howard Dep. 33:7–23 (Q: "And you're talking about on the closing?" **A: "[Y]es, on the initial fees from purchasing the property. I got paid on all of those or most of them.**"); *see* Howard Dep. 42:8–12 ("Q. What agreement do you have with RealSource that entitles you to this $2.3 million you've alleged in . . . your counterclaim? **A. The agreement we lived under the whole time I was there: the three revenue streams for the team up front, ongoing revenue from operations, and back end, either from refinance or sale. Those are the revenue streams we agreed on.**"); Howard Dep. 89:15–18 ("Q. Do you have any writing that says you're entitled to that? Any contract or e-mails that say you're entitled to that? **A. Just the agreement** [Mr. Hanks] **and I had.**"). Mr. Howard clarifies that the three revenue streams were "earned based on the closing of the property[.]" Howard Dep. 89:10–14.
[23] Howard Dep. 20:16–21:5.
[24] *Id.* at 21:2–3.
[25] *Id.* at 74:16–18.
[26] *Id.* at 89:4–24 ("**No. What I'm saying is, when a property is closed, we have three sources of income on properties that would close: up front, ongoing revenue, and the back end. That's what I'm saying.**"); *see id.* at 42:8–12.
[27] *Id.* at 88:3–18.
[28] ECF No. 72. Mr. Anderson and Mr. Howard filed an amendment on January 27, 2022. *See* Am. Countercl., ECF No. 168. On February 24, 2023, the pair filed their Second Amended Counterclaim. *See* ECF No. 219.
[29] ECF No. 208.
[30] Mem. Decision & Order Granting Summ. J. ("Order Granting Summ. J."), ECF No. 279.

on July 13, RealSource moved for summary judgment on Mr. Howard's counterclaims.[31] Mr. Howard filed his opposition on August 24.[32] RealSource replied on September 22.[33]

## STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."[35] "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law . . . ."[36] And the dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[37]

The court "view[s] the evidence and draw[s] all reasonable inferences" in favor of the nonmoving party.[38] "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[39] It may do so "by pointing out to the district court . . . that there is an absence of evidence

---

[31] *See* Mot. for Summ. J.
[32] *See* Opp'n to Mot. for Summ. J. ("Opp'n"), ECF No. 302.
[33] *See* Reply in Support of Mot. for Summ. J., ECF No. 312 (RealSource's originally filed reply brief, ECF No. 311, was mistitled and so RealSource filed an errata with the correct title).
[34] Fed. R. Civ. P. 56(a).
[35] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).
[36] *Palacios v. Fortuna*, 61 F.4th 1248, 1256 (10th Cir. 2023) (citation omitted).
[37] *Johnson v. Jones*, 515 U.S. 304, 314 (1995) (quoting *Anderson*, 477 U.S. at 248).
[38] *Brigham v. Frontier Airlines, Inc.*, 57 F.4th 1194, 1196 (10th Cir. 2023) (citing *Anderson*, 477 U.S. at 255).
[39] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

to support the nonmoving party's case."[40] "The burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'"[41]

## DISCUSSION

RealSource moves for summary judgment on Mr. Howard's nine counterclaims. Seven counterclaims relate to Mr. Howard's assertion that RealSource owes him compensation: theft, conversion, breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and intentional interference with prospective economic relations. The remaining two counterclaims pertain to requested relief: an accounting and various forms of equitable relief. The court first examines the compensation counterclaims.

### A. Summary Judgment Is Proper for RealSource on Mr. Howard's Compensation Counterclaims.

RealSource makes several arguments for why it should prevail on Mr. Howard's compensation counterclaims. To this end, the court's prior decision is relevant. In granting RealSource summary judgment on another real estate agent/independent contractor's counterclaims,[42] the court decided the following: (1) RealSource does not owe an independent contractor a fiduciary duty; (2) the economic loss rule bars the counterclaims for theft, conversion, and intentional interference with economic relations; and (3) Utah's Real Estate

---

[40] *In re Rumsey Land Co.*, 944 F.3d 1259, 1271 (10th Cir. 2019) (quoting *Celotex*, 477 U.S. at 325).
[41] *Id.* (quoting *Anderson*, 477 U.S. at 248). Such facts may include citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).
[42] *See* Order Granting Summ. J. Mr. Anderson asserted counterclaims for theft, conversion, breach of fiduciary duty, breach of contract, breath of the duty of good faith and fair dealing, unjust enrichment, intentional interference with prospective economic relations, misappropriation of trade secrets, accounting, and declaratory relief. Second Am. Countercl. ¶¶ 93–144.

Licensing and Practices Act (the "Licensing Act") bars all compensation counterclaims.[43] Here, RealSource makes similar arguments as to Mr. Howard.[44] The court examines each issue in turn.

### 1. Fiduciary Duty

Mr. Howard claims RealSource owes him three duties: "to not steal or convert any assets belonging to [him,] . . . to not engage in any acts that would create a conflict of interest between . . . RealSource . . . and [himself,] and to refrain from engaging in undisclosed transactions for . . . RealSource['s] benefit."[45] He asserts RealSource breached its duty by stealing money, committing "acts that create a conflict of interest[,]" and engaging in undisclosed transactions and self-dealing."[46] For its part, RealSource contends it owes no fiduciary duty to real estate agents or independent contractors who entered into a valid contractual relationship with the company.

"A fiduciary relationship 'results from the manifestation of consent by one person to another that the other shall act on his behalf and [be] subject to his control, and consent by the other so to act.'"[47] "Whether a fiduciary duty exists is a question of law . . . ."[48] Courts "analyze the nature of the parties' relationship" "[t]o determine whether a duty arises outside of a contract[.]"[49] Generally, "the more attenuated the relationship, the less likely a duty exists."[50] "[C]ertain relationships that involve disparities in knowledge, sophistication, or bargaining

---

[43] Order Granting Summ. J. 12–28.
[44] Mot. Summ. J. 12–18, 20–24.
[45] Second Am. Countercl. ¶ 102.
[46] *Id.* at ¶ 103.
[47] *City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, ¶ 42, 233 P.3d 461 (internal quotation marks omitted) (quoting *Wardley Corp. v. Welsh,* 962 P.2d 86, 89 (Utah Ct. App. 1998)).
[48] *In re Villa W. Assocs.*, 146 F.3d 798, 806 (10th Cir. 1998).
[49] *Donner v. Nicklaus*, 778 F.3d 857, 873 (10th Cir. 2015).
[50] *Id.*

power may create common-law fiduciary duties on the part of the advantaged party."[51] "[A] fiduciary duty generally does not arise in a business transaction absent extraordinary circumstances."[52]

Previously, the court found no fiduciary duty when an independent contractor had an arms-length agreement with RealSource and the contractor could show no special or extraordinary business relationship.[53] "Under the 'law of the case' doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"[54] Mr. Howard "acknowledges that the law of the case warrants summary judgment on his [counter]claim for breach of fiduciary duty."[55]

The undisputed facts support summary judgment for RealSource. Mr. Howard worked for RealSource as an independent contractor.[56] He was not an employee, owner, partner, or manager. He had an agreement with Mr. Hanks to receive compensation when properties closed.[57] More importantly, he offers no evidence to show that his business relationship with RealSource was special or extraordinary. "Independent contractor status is not within the realm of 'certain special' or 'extraordinary' business relationships that Utah has previously determined warrant

---

[51] *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 208 F. Supp. 3d 1193, 1199 (D. Utah 2016) (citing *Yazd v. Woodside Homes Corp.*, 2006 UT 47, ¶ 9, 143 P.3d 283).
[52] *Behav. Med. Consulting, LLC v. CHG Cos.*, No. 2:19-cv-00967, 2022 WL 889030, at *5 (D. Utah Mar. 25, 2022).
[53] Order Granting Summ. J. 22–23.
[54] *United States v. Trent*, 884 F.3d 985, 994 (10th Cir. 2018) (quoting *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991)). "Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit[.]" *Kennedy v. Lubar*, 273 F.3d 1293, 1298 (10th Cir. 2001) (quoting 18 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction § 4478, at 788 (1981)). "[T]he decision whether to apply law of the case doctrine remains a matter of judicial discretion." *Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1242 (10th Cir. 2016). The doctrine is "fundamentally permissive, affording courts . . . 'the discretion to entertain relitigation of settled issues when the failure to do so would work "a manifest injustice."'" *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1211 (10th Cir. 2023) (quoting *Entek*, 840 F.3d at 1242)). Adhering to the court's previous decision would not work a manifest injustice here.
[55] Opp'n 16.
[56] Howard Dep. 13:17–20, 19:24–20:3.
[57] *See id.* at 33:7–23, 42:8–12, 89:15–21.

fiduciary duties, such as in the context of escrow agents, attorney-client relationships, and business partners[.]"[58] For these reasons, the undisputed facts show RealSource did not owe Mr. Howard a fiduciary duty. RealSource therefore prevails as a matter of law on the breach of fiduciary duty counterclaim.

### 2. Economic Loss Rule

RealSource contends the economic loss rule bars Mr. Howard's counterclaims for theft, conversion, intentional interference with economic relations, and unjust enrichment.[59] It argues that because these counterclaims arise out of RealSource's contractual duty to pay Mr. Howard, any alleged failure to compensate him is a breach-of-contract claim. RealSource asserts that any other cause of action is duplicative and thus barred.

"The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care."[60] If no contract exists between two parties, the rule "bars recovery of economic losses in negligence actions unless the plaintiff can show physical damage to other property or bodily injury."[61] But when "a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they

---

[58] *Behav. Med. Consulting*, 2022 WL 889030, at *5 n.3 (citations omitted).
[59] Mot. Summ. J. 20–24.
[60] *Ward v. McGarry*, 2022 UT App 62, ¶ 22, 511 P.3d 1213, *reh'g denied* (July 6, 2022), *cert. denied*, 526 P.3d 828 (Utah 2022) (citation omitted).
[61] *Thorp v. Charlwood*, 2021 UT App 118, ¶ 18 n.4, 501 P.3d 1166, *cert. denied*, 509 P.3d 198 (Utah 2022) (quoting *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 12, 435 P.3d 193).

agreed upon."[62] Specifically, "where the party's tort claim is a mere duplication of its breach of contract claim, there is no exception to the economic loss rule."[63]

In its prior decision, the court found an agreement between RealSource and another real estate agent/independent contractor.[64] The court concluded that the economic loss rule barred the counterclaims for theft, conversion, and intentional interference with prospective economic relations because the alleged torts did not arise from a duty independent from the agreement.[65] Here, Mr. Howard agrees with RealSource's statements that "an express contract governs the subject matter of this dispute" and that "it had an agreement with Howard as an independent contractor."[66] As such, Mr. Howard concedes that the rule bars these three counterclaims.[67]

The parties agree that Mr. Howard was an independent contractor and had an agreement with RealSource.[68] As a result, Mr. Howard's counterclaims for theft, conversion, and intentional interference with prospective economic relations fail as a matter of law because of the economic loss rule. The court grants summary judgment to RealSource on these counterclaims.

### 3. Utah's Real Estate Licensing and Practices Act

The court last turns to RealSource's contention that the Licensing Act bars Mr. Howard's compensation counterclaims. The Licensing Act states that a "sales agent or associate broker

---

[62] *Val Peterson Inc. v. Tennant Metals Pty. Ltd.*, 2023 UT App 115, ¶ 44, ___ P.3d ___ (quoting *Reighard v. Yates*, 2012 UT 45, ¶ 20, 285 P.3d 1168).

[63] *HealthBanc Int'l*, 2018 UT 61, ¶ 10; *see Ward*, 2022 UT App 62, ¶ 22 ("'[I]f the tort claim alleges a breach of a duty that is separate and distinct from any contractual duty existing between the parties'—an independent duty—'the plaintiff can proceed with that separate, non-contract claim.'" (citation omitted)).

[64] Order Granting Summ. J. 14–15.

[65] *Id.* at 15–20. The court did not address whether the economic loss rule barred Mr. Anderson's unjust enrichment cause of action because RealSource did not sufficiently develop the argument. *Id.* at 20 n.142. Here, the court does not address this counterclaim because, for reasons later discussed, Utah's Real Estate Licensing and Practices Act precludes the unjust enrichment counterclaim.

[66] Opp'n 15 (quoting Mot. Summ. J. 22–23).

[67] *Id.*

[68] *See supra* notes 56–57.

may not sue in that individual's own name for the recovery of a fee, commission, or compensation for services as a sales agent or associate broker unless the action is against the principal broker with whom the sales agent or associate broker is or was affiliated."[69] Utah defines a "sales agent" as one who is licensed and is "affiliated with a principal broker, either as an independent contractor or an employee . . . to perform for valuable consideration an act described in Subsection (20)" of the regulations.[70] Under this section, such acts extend to an individual who "assists or directs in the closing of a real estate transaction with the expectation of receiving valuable consideration[.]"[71] Utah courts have held that the Licensing Act applies to a "finder" who gets compensation for his "efforts in bringing the parties together" in real estate transactions.[72] In short, the Licensing Act bars an individual without a broker's license from seeking compensation for activities that help effect a sale of property.

The court earlier found that another real estate agent/independent contractor's counterclaims failed as a matter of law because the Licensing Act applied to a "finder."[73] Mr. Howard concedes that the court's earlier ruling on the Licensing Act also bars his counterclaims.[74]

---

[69] Utah Code Ann. § 61-2f-409(2)(a) (West 2023).
[70] *Id.* at § 61-2f-102(28).
[71] *Id.* at § 61-2f-102(20).
[72] *Andalex Res., Inc. v. Myers*, 871 P.2d 1041, 1043 (Utah Ct. App. 1994); *see Sachs v. Lesser*, 2008 UT 87, ¶ 11, 207 P.3d 1215 ("The term 'principal real estate broker' includes finders."); *C.J. Realty, Inc. v. Willey*, 758 P.2d 923, 926–27 (Utah Ct. App. 1988) (same). "The act of finding or locating a prospective buyer falls within the reach of the broker licensing statutes." *Andalex*, 871 P.2d at 1045 & n.6 ("The legislature clearly intended the licensing requirements to apply to 'finders.'" (citing *Diversified Gen. Corp. v. White Barn Golf Course, Inc.*, 584 P.2d 848, 849–50 (Utah 1978))). "The essential feature of a [sales agent]'s employment is to bring the parties together in an amicable frame of mind, with an attitude toward each other and toward the transaction in hand . . . ." *Diversified Gen.*, 584 P.2d at 850.
[73] Order Granting Summ. J. 24–27.
[74] Opp'n 17 ("Howard acknowledges that the [c]ourt has already rendered a legal decision on this question and that this prior decision applies equally to [his] compensation [counter]claim[s]."). With this said, Mr. Howard states his "disagree[ment] with the [c]ourt's ruling on this issue and [his] inten[tion] to preserve all of his related rights and arguments for appeal." *Id.* at 16.

Mr. Howard is not a broker.[75] He has a real estate license and worked for RealSource as a real estate agent to help acquire properties.[76] He joined RS Equity's acquisition team to find, locate, and underwrite properties; to help purchase those properties; to facilitate negotiations; and to stay involved in due diligence after closing.[77] When properties closed, he received payment.[78] As Mr. Howard admits, he "provided services to RealSource that included 'assist[ing] or direct[ing] in the procurement of prospects for or the negotiation of a [real estate] transaction' and 'assist[ing] or direct[ing] in the closing of a real estate transaction with the expectation of receiving valuable consideration.'"[79] In other words, he received compensation for "bringing the parties together" and related efforts.[80] The undisputed facts thus show Mr. Howard was at least a "finder" for purposes of the Licensing Act.[81] Because Mike Anderson was RealSource's principal broker, Mr. Howard should have brought his counterclaims against Mike Anderson. Accordingly, the Licensing Act bars Mr. Howard's compensation counterclaims and RealSource prevails on the seven counterclaims as a matter of law.[82]

B.  **Mr. Howard's Counterclaims for an Accounting and Declaratory Relief Necessarily Fail.**

As discussed above, Mr. Howard's compensation counterclaims cannot succeed. He thus has no counterclaims that would entitle him to an accounting or equitable relief. The court grants summary judgment to RealSource on these two counts.

---

[75] Howard Dep. 12:21–22.
[76] *Id.* at 12:14–13:6, 19:24–20:3.
[77] *Id.* at 29:1–6.
[78] *Id.* at 20:16–23, 34:24–35:1; Email from Kelly Randall.
[79] Opp'n 16 (quoting Order Granting Summ. J. 25).
[80] *Andalex*, 871 P.2d at 1045.
[81] As Mr. Howard confirms, "there is no material dispute of material fact as to the types of services [he] provided to RealSource." Opp'n 16.
[82] For this reason, the court need not address the parties' other arguments. *See* Mot. Summ. J. 9–12, 18–20, 24–28; Opp'n 17–23.

## ORDER

For the foregoing reasons, the court GRANTS RealSource's Motion for Summary Judgment Against Michael Howard's Affirmative Claims.[83] Summary judgment is granted to RealSource on Mr. Howard's nine counterclaims.

Signed October 17, 2023.

BY THE COURT

_____
David Barlow
United States District Judge

---

[83] ECF No. 288.