THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| NATHAN W. HANKS and REALSOURCE EQUITY SERVICES, LLC,<br><br>Plaintiffs/Crossclaim Defendant,<br><br>v.<br><br>MICHAEL S. ANDERSON,<br><br>Defendant/Crossclaim Plaintiff. | **MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART [330] NATHAN W. HANKS' MOTION FOR SUMMARY JUDGMENT AGAINST MICHAEL ANDERSON'S INDEMNIFICATION CROSSCLAIM**<br><br>Case No. 2:19-cv-00999<br><br>District Judge David Barlow |

Before the court is Plaintiff Nathan Hanks' Motion for Partial Summary Judgment Against Michael Anderson ("Mike Anderson")[1] on his Indemnification Crossclaim.[2] Having reviewed the briefing and relevant law, the court finds oral argument unnecessary.[3] For the reasons below, the court grants the motion in part and denies it in part.

## BACKGROUND

Mike Anderson is a real estate broker and investor who founded the first RealSource entity in 1992 to manage property investments.[4] Nathan Hanks joined RealSource as a real estate agent in 2002, after which he and Mike Anderson formed RealSource Equity Services, LLC ("RS Equity").[5] The parties each owned a 50% interest in RS Equity until January 1, 2018, when they

---

[1] Because a number of the parties share first or last names, the court uses their full names throughout.
[2] Mot. for Summ. J. Against M. Anderson on his Indemnification Crossclaim 29, ECF No. 330, filed Nov. 17, 2023 ("MSJ").
[3] See DUCivR 7-1(g).
[4] Decl. of M. Anderson ¶ 3, ECF No. 30, filed March 3, 2020.
[5] Id. at ¶¶ 4–5; Decl. of N. Hanks ¶ 2–4, ECF No. 6, filed Feb. 13, 2020.

1

entered the Membership Interest Purchase Agreement ("Agreement"), through which Nathan Hanks agreed to purchase Mike Anderson's interest in the company.[6] As part of the agreement, Mike Anderson agreed that RealSource could use his brokerage license for up to twenty-four months after closing (the "Brokerage Transition Period").[7] The parties further agreed that Nathan Hanks would indemnify Mike Anderson for any claim "arising out of the use" of his brokerage license during the Brokerage Transition Period.[8] However, the parties agreed that Mike Hanks would not be liable for indemnification until the aggregate amount of indemnified costs exceeded $20,000.[9]

Nathan Hanks and RS Equity initially filed suit against Mike Anderson on December 27, 2019, alleging various breaches of the Agreement and misappropriation of trade secrets.[10] Soon after, Plaintiffs twice amended their complaint to allege claims against Defendants Kent Anderson and Michael Howard (collectively "crossclaimants"), former real estate agent independent contractors for RealSource, and AKA Partners, LLC ("AKA"), a real estate investment business Mike Anderson started shortly after leaving RealSource.[11]

Defendants initially filed answers on April 10, 2020.[12] Mike Anderson and AKA Partners filed an amended answer including a counterclaim against Nathan Hanks for breach of contract,

---

[6] Third Am. Compl. ¶ 9, ECF No. 214, filed Feb. 14, 2023; Memb. Interest Purchase Agreement ("Agreement") ¶ 2.1, ECF No. 6-1, filed Feb. 13, 2020.
[7] Agreement 7.6.
[8] Agreement 9.3(c).
[9] Agreement 9.4(b).
[10] Compl., ECF No. 2, filed Dec. 27, 2019.
[11] Third Am. Compl.; Dep. of Kent Anderson 98:14, 100:19–22, ECF No. 288-4, filed July 13, 2023; Dep. of Michael Howard, 20:1-9, ECF No. 288-2, filed July 13, 2023; Decl. of M. Anderson ¶¶ 25–26.
[12] Answer to Second Am. Compl., ECF No. 53, filed April 10, 2020; Michael S. Anderson's and AKA Partners, LLC's Answer, ECF No. 54, filed April 10, 2020.

which Nathan Hanks answered on August 28, 2020.[13] Kent Anderson and Michael Howard filed an amended answer which included nearly identical counterclaims against Nathan Hanks and RS Equity and crossclaims against Mike Anderson on September 4, 2020.[14]

On October 7, 2020, Mike Anderson replied to the crossclaim, later amending it to include a crossclaim for indemnification against Nathan Hanks.[15] Mike Anderson asserts that Nathan Hanks is obligated to indemnify him for any claims arising out of RealSource's use of his brokerage license under the Agreement, which he argues encompasses the crossclaims brought by Kent Anderson and Michael Howard.[16]

The court granted RS Equity summary judgment on all of Kent Anderson[17] and Michael Howard's[18] counterclaims. On November 15, 2023, Kent Anderson, Michael Howard, and Mike Anderson stipulated to the dismissal of all but two of the crossclaims against Mike Anderson, retaining only the causes of action for breach of contract and breach of the duty of good faith and fair dealing (the "underlying crossclaim").[19] Since then, none of the parties have filed a motion related to the two remaining crossclaims with the court. The deadline for dispositive motions was November 17, 2023.[20]

---

[13] Michael S. Anderson's and AKA Partners, LLC's Am. Answer & Countercl., ECF No. 67, filed Aug. 7, 2020; Answer to Michael Anderson's Countercl., ECF No. 70, filed Aug. 28, 2020.
[14] Defs.' Kent Anderson and Michael Howard's Am. Answer to the Second Am. Compl., Countercl., Crosscl., and Third-Party Compl. 25–47, ECF No. 72, filed Sep. 4, 2020 ("Crossclaim").
[15] Crossclaim 25–47; M. Anderson's Reply to K. Anderson and M. Howard's Countercl., Crosscl.; M. Anderson's Crosscl. For Indemnity against N. Hanks, ECF. No. 103, filed Oct. 7, 2020 ("Indemnity Crosscl.").
[16] *Id.* at 11.
[17] Mem. Decision and Order Granting RS's Mot. for Summ. J. Against K. Anderson's Aff. Claims, ECF No. 279, filed June 22, 2023.
[18] Mem. Decision and Order Granting RS's Mot. for Summ. J. Against M. Howard's Aff. Claims, ECF No. 316, filed Oct. 16, 2023.
[19] Rule 41 Stipulation to Dismissal Without Prejudice of Certain Claims, ECF No. 323, filed Nov. 15, 2023.
[20] Order granting Mot. for Amend. Sched. Order, ECF No. 315, filed Oct. 17, 2023.

Nathan Hanks did not answer Mike Anderson's indemnification crossclaim until July 13, 2023.[21] On November 17, 2023, Nathan Hanks moved for partial summary judgment against Mike Anderson on the same crossclaim.[22] The crossclaim answer was then stricken by Magistrate Judge Daphne Oberg because it was filed over three years too late.[23] Nathan Hanks objected to the magistrate's decision,[24] which the court overruled.[25] Next, Nathan Hanks filed a motion requesting leave for an extension of time to answer,[26] which the magistrate judge denied.[27] Nathan Hanks again objected to the magistrate's order,[28] which the court overruled.[29] Mike Anderson filed a memorandum in opposition to the motion for partial summary judgment on January 26, 2024,[30] to which Nathan Hanks responded on February 9, 2024.[31]

## STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[32] "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the

---

[21] Answer to Michael Anderson's Crosscl., ECF No. 289, filed July 13, 2023.
[22] MSJ.
[23] Mem. Dec. and Order Granting Michael S. Anderson's Mot. to Strike Answer to his Crosscl. Against Nathan Hanks 3, ECF No. 322, filed Nov. 15, 2023.
[24] Obj. to Mem. Dec. and Order Granting Michael S. Anderson's Mot. to Strike Answer to His Crosscl. Against Nathan Hanks, ECF No. 347, filed Nov. 22, 2023.
[25] Mem. Dec. and Order Overruling [347] Obj. to Mem. Dec. and Order Granting Michael S. Anderson's Mot. to Strike Answer to His Crosscl. Against Nathan Hanks, ECF No. 359, filed Dec. 27, 2023.
[26] Nathan Hanks' Mot. for Leave to File an Answer to Michael Anderson's Crosscl., ECF No. 360, filed Jan. 11, 2024.
[27] Order Denying N. Hanks' Mot. for Leave to File an Ans. to Michale Anderson's Crosscl. ("Magistrate's Order"), ECF No. 361, filed Jan. 12, 2024.
[28] N. Hanks Obj. to Order Denying Mot. For Leave to File an Ans., ECF No. 362, filed Jan. 26, 2024.
[29] Mem. Dec. and Order Overruling N. Hanks Objection to Order Denying Leave to File an Answer, ECF No. 388, filed July 23, 2024.
[30] Mem. in Opp. to Mot. for. Partial Summ. J., ECF No. 369, filed Jan. 26, 2024 ("Mem. in Opp. to MSJ").
[31] Reply to Response to Mot. re Mot. for Partial Summ. J., ECF No. 379, filed Feb. 2, 2024 ("Reply Mem.").
[32] Fed. R. Civ. P. 56(a).

nonmoving party on the evidence presented."[33] The court "view[s] the evidence and draw[s] all reasonable inferences" in favor of the nonmoving party.[34]

"The burden of showing that no genuine issue of material fact exists is borne by the moving party."[35] This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[36] "The burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'"[37] "The movant is entitled to judgment as a matter of law if the plaintiff fails to provide sufficient evidence supporting a necessary element of his claim."[38]

## DISCUSSION

Nathan Hanks contends the court should grant him summary judgment on Mike Anderson's indemnification crossclaim. Before turning to Nathan Hanks' arguments, the court addresses Mike Anderson's argument that all allegations in his crossclaim have been admitted due to Nathan Hanks' failure to answer.

### I. Admitted Facts

Mike Anderson asserts that because Nathan Hanks did not answer the crossclaim, all its allegations are deemed admitted, and Nathan Hanks is barred from asserting any defense. Nathan Hanks replies that many of the points Mike Anderson claims have been admitted are

---

[33] *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (internal quotation omitted)).
[34] *Brigham v. Frontier Airlines, Inc.*, 57 F.4th 1194, 1196 (10th Cir. 2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).
[35] *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).
[36] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[37] *In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1271 (10th Cir. 2019) (quoting *Liberty Lobby*, 477 U.S. at 255)).
[38] *Valentine v. James River Ins. Co.*, No. 22-1323, 2023 WL 8614113, at *2 (10th Cir. Dec. 13, 2023) (quoting *Throupe v. Univ. of Denver*, 998 F.3d 1243, 1250 (10th Cir. 2021)).

legal conclusions, which have not been admitted due to his failure to answer the crossclaim. He further argues that he may still challenge any asserted damages.

Under Federal Rule of Civil Procedure 12, a party must serve an answer to a crossclaim "within 21 days after being served with the pleading that states the counterclaim or crossclaim."[39] If a party fails to answer, any allegation "other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."[40] Although factual allegations of the complaint are taken as true,[41] "a defendant is not prohibited from challenging the legal sufficiency of the admitted allegations."[42] Even when an entry of default is appropriate, parties may still challenge conclusions of law.[43]

Nathan Hanks failed to answer Mike Anderson's crossclaim, therefore, all factual allegations besides those relating to damages are deemed admitted.[44] Nathan Hanks may challenge the crossclaim's conclusions of law and factual allegations relating to the amount of damages. Accordingly, the court addresses Nathan Hanks' arguments in favor of summary judgment accepting all of the crossclaim's facts, but not its conclusions of law, as true, construing them in the light most favorable to Mike Anderson.

---

[39] Fed. R. Civ. P. (12)(1)(B).
[40] Fed. R. Civ. P. (8)(b)(6).
[41] *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd*, 47 F.4th 156, 161 (3d Cir. 2022) (accepting facts in unanswered complaint as true after default judgment) (quoting *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990)).
[42] *Tripodi v. Welch*, 810 F.3d 761, 756 (10th Cir. 2016) (finding that by failing to defend answer, defendant had "relieved [plaintiff] from having to prove the complaint's factual allegations.")).
[43] *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).
[44] Reply Mem. 6.

## II. Nathan Hanks' Arguments

Nathan Hanks' arguments fall into four categories: (1) two arguments are about affirmative defenses the court has already found Nathan Hanks cannot assert due to his failure to answer Mike Anderson's crossclaim; (2) three claims that address the merits of the crossclaimants' breach of contract claims against Mike Anderson; (3) an argument that the damages Mike Anderson seeks indemnification for have not been disclosed; and (4) the crossclaims are for conduct that happened before the Brokerage Transition Period, so they are not covered. The court addresses each argument in turn.

### A. Waived Affirmative Defenses

Nathan Hanks asserts two arguments that have been waived by his failure to answer the crossclaim, claiming first that Mike Anderson "failed to defend himself against Kent Anderson and Michael Howard's claims,"[45] then stating Mike Anderson "breached the indemnification provisions of the agreement."[46] Under Federal Rule of Civil Procedure 8, such defenses must be affirmatively stated, which Nathan Hanks failed to do.[47] Additionally, these are the two affirmative defenses the Magistrate Judge already found are time-barred. The magistrate judge prohibited Nathan Hanks from belatedly asserting the defenses "(1) that Michael Anderson has not adequately defended the claims for which he seeks indemnity, and (2) that Michael Anderson's material breaches of the agreement preclude him from obtaining indemnity" because

---

[45] MSJ 22.
[46] MSJ 29.
[47] Fed. R. Civ. P. (8)(c)(1).

7

they would prejudice Mike Anderson and delay the case.[48] Thus, these claims are barred from consideration.

### B. Defenses to the Underlying Crossclaim

Three of Nathan Hanks' arguments address the merits of Kent Anderson and Michael Howard's crossclaims. Nathan Hanks states there is no agreement between the crossclaimants and Mike Anderson that requires indemnification, that the underlying crossclaim fails under the statute of frauds, and the statute of limitations partially bars the underlying crossclaim.[49] Mike Anderson counters that these points do not resolve whether Nathan Hanks must indemnify him or bind the parties in the underlying crossclaim.[50]

"One of the most basic principles of contract law is that, as a general rule, only parties to the contract may enforce the rights and obligations created by the contract."[51] "Allegations in a complaint generally cannot alter the composition of the parties to a contract."[52] "Only those who are a party to a contract have a legally protectable interest in that contract."[53]

Each of Nathan Hanks' arguments address the dispute between Mike Anderson and the crossclaimants—not the validity of the indemnification provision or whether it covers the underlying crossclaim. Nathan Hanks essentially attempts to litigate the underlying crossclaim without explaining how he has standing to assert these contractual defenses. His arguments are

---

[48] Order Denying N. Hanks' Mot. to File an Ans. 3.
[49] MSJ.
[50] Mem. in Opp. to MSJ 16.
[51] *Fericks v. Lucy Ann Soffe Tr.*, 2004 UT 85, ¶ 24, 100 P.3d 1200, 1205–06 (quoting *Wagner v. Clifton*, 2002 UT 109, ¶ 13, 62 P.3d 440).
[52] *Fericks*, 100 P.3d at 1206; see also *Super 7 Motel Associates v. Wang*, 16 Cal. App. 4th 541, 546, 20 Cal. Rptr. 2d 193, 197 (1993) (real estate broker was not a party to contract that provided for attorney fees and therefore could not recover under attorney fee provision).
[53] *City of Grantsville v. Redevelopment Agency of Tooele City*, 2010 UT 38, 233 P.3d 461, 466. Although third-party beneficiaries or assignees may have a legally protectable interest in a contract, N. Hanks has not argued this point, so the court need not address it. *See id.* at n.2 (citing *State v. Lucero*, 47 P.3d 107, 109 (Utah 2002)).

defenses *Mike Anderson* could assert. They are unavailable to Nathan Hanks as a defense to the indemnification claim at hand.

### C. Damages

Next, Nathan Hanks contends that he is entitled to summary judgment on the indemnification claim because damages have not been established.[54] Nathan Hanks argues the crossclaimants have failed to disclose damages against Mike Anderson, therefore, he has not alleged damages for which he may be indemnified.[55] Mike Anderson responds that crossclaimants have submitted their own damages disclosures and expert reports, so Nathan Hanks is on notice of the potential damages. Mike Anderson also asserts that his damages on the indemnity claim "will be the factfinder's determination," which has "obviously not yet been made."[56]

"Generally, a cause of action for indemnity does not arise until the liability of the party seeking indemnity results in his damage, either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment."[57] "Under Utah law a right of indemnification does not accrue or vest until damages arise, and an obligation to indemnify only arises when there is something to be indemnified."[58] Parties seeking indemnification "must

---

[54] Nathan Hanks claims he is entitled to summary judgment because the crossclaimants have failed to disclose damages against Michael Anderson, who has in turn failed to disclose damages against Nathan Hanks. *See* MSJ at 23-28. The court need not reach this argument, as damages have not been determined in Kent Anderson and Michael Howard's crossclaim.
[55] MSJ at 23.
[56] Mem. in Opp. to Mot. for. Partial Summ. J. 23, ECF No. 369.
[57] *Salt Lake City Corp. v. Kasler Corp.*, 855 F. Supp. 1560, 1573 (D. Utah 1994).
[58] *United States v. Brinton*, 880 F. Supp. 2d 1158, 1160 (D. Utah 2012) (quoting *Pavoni v. Nielsen*, 999 P.2d 595, 598 (Utah App. 2000)) (also quoting *Soderberg v. Holt*, 86 Utah 485, 46 P.2d 428, 430 (Utah 1935)).

defend against the claims (and resolve them) before seeking indemnification."[59] The party seeking indemnification has the "burden of producing evidence showing they actually incurred a loss that would entitle them to indemnification under" their agreement.[60]

Mike Anderson notes that he "simply could not—and still cannot—be more precise regarding" the amount of damages he is seeking because the merits of Kent Anderson and Michael Howard's crossclaim still need to be resolved.[61] Without a resolution of the underlying crossclaim, there is an insufficient basis to determine whether Nathan Hanks is or is not contractually obligated to indemnify Mike Anderson.[62]

The Agreement itself provides further support. It states that Nathan Hanks "shall not be liable" for indemnification until the aggregate amount of costs Mike Anderson seeks indemnification for exceeds $20,000.[63] Obviously, the amount of damages the crossclaimants may eventually receive, if any, has not yet been established.[64] The amount of damages may eventually be determined to be less than $20,000, thereby precluding any duty to indemnify under the plain terms of the Agreement. Accordingly, summary judgment on the indemnification crossclaim is denied without prejudice, and Nathan Hanks may file a motion on this issue once any relevant damages have been determined.

---

[59] *In re Aramark Sports & Ent. Servs., LLC*, No. 2:09-CV-637-TC, 2012 WL 3776859, at *7 (D. Utah Aug. 29, 2012) (applying Utah law) (finding that party claiming contractual indemnification had to resolve claims brought by third parties before seeking indemnification).
[60] *Pavoni v. Nielsen*, 999 P.2d 595, 598 (Utah App. 2000).
[61] Mem. in Opp. to Mot. for Partial Summ. J. 22, ECF 369.
[62] *United States v. Brinton*, 880 F. Supp. 2d 1158, 1160 (D. Utah 2012) (applying Utah law) ("Under a contract to indemnify for damages or loss, an action does not arise until the indemnitee has actually incurred a loss.")
[63] Agreement ¶ 9.4(b), ECF No. 6-1.
[64] Mem. in Opp. to Mot. for Partial Summ. J. 23, ECF No. 369 ("The evidence of Mike Anderson's damages on his indemnity claim will be the factfinder's determination of the amount, if any, of his liability to Kent and Howard. Where that determination has obviously not been made, Mike Anderson cannot disclose it."); MSJ at 31 ("There are no damages for which Michael can claim indemnification.").

### D. Timing

Finally, Nathan Hanks claims that he is entitled to summary judgment because the claims for which Mike Anderson seeks indemnification were brought for conduct that happened before the timeframe covered by the Agreement's indemnification provision. Mike Anderson counters that the Agreement covers the crossclaims because they were filed during the brokerage transition period.

The Agreement states that Nathan Hanks shall indemnify Mike Anderson for any claim "arising out of the use by RS Brokerage of the Principal Brokerage Licenses during the Brokerage Transition Period."[65] The Brokerage Transition Period is the twenty-four-month period after the closing, which both parties agree covers January 2018 to January 2020.[66]

"Utah courts have held that indemnity agreements, like releases, are valid only if the contract language clearly and unequivocally expresses the parties' intent to indemnify one another."[67] "Indemnity contracts are subject to the same rules of construction as other contracts; thus we read the contract as a whole and harmonize and give effect to all provisions."[68] "Provided that the language within the four corners of the agreement is unambiguous, we look no further than the plain meaning of the contractual language."[69] Under Utah law, the enforceability of an indemnity agreement depends on the plain meaning of the text and the court "will not grant summary judgment if it finds an ambiguity in the text of a contract and a factual issue about the

---

[65] Agreement ¶ 9.3(c).
[66] *Id.* at ¶ 7.6; see also MSJ at 21; Mem. in Opp. to Mot. for Partial Summ. J. 17, ECF No. 369.
[67] *Russ v. Woodside Homes, Inc.*, 905 P.2d 901, 904 (Utah Ct. App. 1995).
[68] *Pavoni v. Nielsen*, 999 P.2d 595, 598 (Utah App. 2000).
[69] *Mid-Am. Pipeline Co. v. Four-Four, Inc.*, 2009 UT 43, 216 P.3d 352, 356.

parties' intentions."[70] However, if the contract is unambiguous, "the parties' intentions are determined from the plain meaning of the contractual language, and may be interpreted as a matter of law."[71]

The parties do not contest the validity of the indemnification provision—they only disagree on what "arising out of" means. By its own plain language, the Agreement specifically covers claims brought due to RS's use of the brokerage license during the Brokerage Transition Period. For this provision to apply, any claim Mike Anderson is seeking indemnification for must be brought against him because of RealSource's use of his brokerage license from January 2018 to January 2020.

Mike Anderson's proposed interpretation is contrary to the plain meaning of the Agreement. He argues that claims arising out of the use of the brokerage licenses during the brokerage transition period include any claims brought during that period, whether they relate to the use of the license or not.[72] Not so. The provision in question clearly and unequivocally applies only to claims "arising out of the use by RS Brokerage of the Principal Brokerage Licenses." Other claims brought during that period that arose from other disputes are not covered by the plain terms of the Agreement. Accordingly, Nathan Hanks is granted summary judgment on claims brought by Mike Anderson that are not covered by the indemnification provision of the Agreement.

---

[70] *Fid. & Deposit Co. of Maryland v. Goran, LLC*, No. 2:17-CV-00604-TC-PMW, 2020 WL 7401628, at *5 (D. Utah Dec. 17, 2020), amended, No. 2:17-CV-00604-TC-JCB, 2021 WL 4332775 (D. Utah Sept. 23, 2021) (*quoting Faulkner v. Farnsworth*, 665 P.2d 1291, 1293 (Utah 1983)).
[71] *Mid-Am. Pipeline Co.*, 2009 UT 43 ¶ 19.
[72] Mem. in Opp. to Mot. for. Partial Summ. J. 17, ECF No. 369 (stating that "It is undisputed that Mike Anderson was the principal broker for RealSource in 2019 —which was clearly within the "Brokerage Transition Period"—when Kent and Howard first asserted their compensation claims against Hanks and RealSource.").

12

## ORDER

Accordingly, the court grants in part and denies in part Nathan Hanks' Motion for Partial Summary Judgment.[73] The motion is denied without prejudice on the damages claim. Nathan Hanks is granted leave to file a motion on this issue after the underlying crossclaim has been resolved.

Signed September 5, 2024.

BY THE COURT

David Barlow
United States District Judge

---

[73] MSJ, ECF No. 330.